B. T. NEALE *vs.* THE VESTRY OF ST. PAUL'S CHURCH.—
*December,* 1849.

The act of 1802, ch. 111, authorising the incorporation of churches, is not
to be restricted to individual churches or societies singly; but two different
denominations may unite and form one society or congregation within the
meaning of the act.

Appeal from *Washington* county court.

This was an action of *assumpsit* by the appellant against
the appellees, who are styled in the declaration, " *The Vestry
of the German United Evangelic Lutheran, and Evangelic
Reformed Congregations, Saint Paul's Church, on the west
side of Conococheague Creek,*" in said county, The defen-
dants appeared, and pleaded *non assumpsit,* upon which issue
was joined.

At the trial, the plaintiff, to sustain the issue on his part, of-
fered in evidence the paper recited in the opinion of this court,
to which the defendants objected, as inadmissible in evidence,
and this objection the court (MARTIN, C. J., BUCHANAN and
MARSHALL, J.,) sustained. The plaintiff excepted, and ap-
pealed to this court.

The cause was argued before DORSEY, C. J., MAGRUDER
and FRICK, J.

By JOHN THOMPSON MASON, for the appellant, and
By GEORGE SCHLEY, for the appellees.

FRICK, J., delivered the opinion of this court.

The plaintiff, to sustain this action in the court below against
the defendants, as a corporation, produced a paper purporting
to be executed according to the act of 1802, ch. 111, and in
due time recorded, which recites that—

"At the request of the "*German United Lutheran, and
Evangelic Reformed Congregations of St. Paul's Church,*"
&c., the following regulations were recorded the 18th of Janu-
ary, 1806:

"We, the members of the "*German United Evangelic Lutheran, and Evangelic Reformed Congregations of St. Paul's Church*," have, agreeably to an act of the General Assembly of this State, passed at a session in 1802, entitled, an act to incorporate certain persons in every christian church or congregation in this State, convened together this 21st of October, 1805, to form a plan, and adopt such rules and regulations as are indispensably necessary for conducting and managing our temporalities, agreeably to such act of Assembly, and unanimously agreed as follows:

"1st. All those persons shall be considered as regular members of these *united* congregations, who are at least twenty-one years of age," &c. The articles of association then go on to provide, that as each is to be attended by different ministers of the two aforesaid persuasions, both such ministers, for the time being, are to be considered members of the corporation; and that the election of such ministers, and all matters relating to the principles of either religion, must be left to each congregation separately. That the trustees shall consist of the duly elected ministers, *or minister, if but one,* for the time being, and ten other members, (five out of each congregation.) And by the 10th article: "*This corporation,* and their successors in office, forever, shall be vested with all the powers and authorities vested in them by the aforesaid act of Assembly, *as a body politic or corporate,* and shall provide for the management and preservation of all the property, buildings, implements, cash, &c., and apply them for the benefit of these united congregations, and provide for the support of *the church,* and the laborers therein."

To the admissibility of this paper in evidence, the defendants objected, and the objection being sustained by the court, the plaintiff excepted, and has appealed to this court.

The ground of the objection here taken is, that the provisions of this act of 1802, refer to each individual, particular church, society or congregation singly, and not to two or more associated together, with a view to the privileges conferred by it. We cannot consent to give to the act this restricted con-

struction. The design of the Legislature manifestly was, to secure to every christian association, by their own action on the subject, the rights and privileges which, prior to the act, it was usual to acquire by the separate action of the Legislature upon each case, as presented to them. It was intended to promote the cause of religion, by conferring on "religious societies equal rights and privileges in all things concerning the temporalities and government of their churches, congregations and societies, and without disturbing private opinions, or affecting the right of judgment in matters of religion, to make provision for their several exigencies in affairs of a temporal or civil nature, as far as difference of circumstances would admit." Such is the tenor of the whole preamble to the act, confining the intended privilege to associations *christian* in their profession of faith, but under that designation extended to "*every church, society or congregation.*" And such are the terms of the enacting clause of the act. It certainly cannot be intended to erect a barrier between different denominations of christians, and prevent their union on common ground, at least with regard to the temporalities and secular administration of their property. Yet such would be the necessary result of the restricted construction contended for by the appellees, at the same time, that such an overture of harmony and mutual forbearance, uniting parties in one common purpose of religion, would rather promote than contravene the spirit of the act.

Here it is objected that *two* societies united for the purposes contemplated. Does not the very act of union constitute them *one?* Not that they have united in doctrine; that they expressly reserve. But united certainly in name and designation, "*a church;*" as one corporation with respect to the property owned and possessed by them, and the mutual enjoyment and dedication of it in common for religious purposes.

And, upon their face, these articles of association purport to be one act of incorporation, under the united names and designation of the parties. They are constituted "one body politic," "society," or "corporation," with one "body of trustees," within the number prescribed by the act, for the pur-

poses expressly stated in the act, to manage the temporalities of the corporation. And so constituted, the act did not design to enquire, whether such association and union was made of conflicting and discordant materials, or to prescribe that every denomination of christians should be confined within its own limitations of doctrine. The privilege of the act is offered to *all*, by including every christian church. And it can be no objection that two or more unite to constitute *one* society or congregation, though differing in principles of discipline or doctrine which each may reserve to itself. That every christian church may assert the privilege, does not necessarily imply that two may not unite; especially if such union is designed and expressed to constitute them one, for all the ends contemplated by the act, as heretofore recited from the preamble.

These parties style themselves, throughout, a corporation; and all the provisions under which they have united, as expressed in their articles of association, are clearly within the operation and meaning of the act. It is impossible that the act could contemplate that any one society or congregation might act singly in the premises, but that if two unite for the same purpose, the application must be addressed to the Legislature to sanction such union, provided the object of such union and incorporation into one, be otherwise within the spirit of the act.

There is, then, no such incompatibility as to render this union repugnant to the act. It may result from the connection of the parties that the whole may be made responsible for the debts or contracts of one party, within the terms of their association. But this is no more than a necessary consequence resulting from their own compact together. Constituting themselves one corporation, renders the joint property liable for the legal obligations contracted by them. It is their own act, and the legal consequences that result from it, they are not now at liberty to deny or evade.

To permit them now to stultify themselves, (even if the question were doubtful,) would be gross injustice to innocent creditors with whom they have contracted. They have pre-

sented themselves before the community, for a period over forty years, as a corporation exercising, and competent to exercise corporate functions.   Through all this period they have claimed to enjoy the benefits and privileges of their association.   They have adopted and used, throughout, their corporate style of union before the world, in the administration of their religious and secular concerns.   They have, moreover, answered to that . name, and under it have pleaded to the present action.   It is too late now, when called upon to maintain the fidelity of their contracts, to sever their union, and renounce the character in which they assumed them, and in which they still stand, at least for all the purposes of the present action.

<div align="right">

JUDGMENT REVERSED, AND

PROCEDENDO AWARDED.